[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. STATEMENT OF APPEAL
The plaintiff, Giuseppe Furano, appeals from the decision of the defendant, the Greenwich Planning and Zoning Commission, approving site plan application #2177 subject to a number of modifications. At trial, plaintiff's counsel confined the appeal to the Commission's requested modification to the site plan application regarding the commercial use of the front yard setback.
II. FACTS
The plaintiff submitted a proposed site plan application, #2161, dated October 24, 2000 and revised January 2, 2001, to the Planning and Zoning Commission. (Return of Record [ROR], Item 1(i).) The plaintiff sought to convert the space occupied by a dog grooming establishment in an existing building on the site into a retail garden shop. (ROR, Items 1(i); 1(a).) The site, which is owned by the plaintiff, is located at 364 West Putnam Avenue in the General Business (GB) zone of the town of Greenwich. (ROR, Items 1(i); 4(d).) The Commission conducted a public hearing on January 23, 2001, and unanimously denied, without prejudice, the plaintiff's site plan application in a letter of decision dated January 31, 2001. (ROR, Items 1(i); 4(d).) One reason for the denial of this application was that the plaintiff's proposed use of the required front yard setback for the display of an inventory of plants and materials constituted a commercial activity which would violate the Commission's policy requiring that front yard setbacks remain free of commercial activity. (ROR, Item 4(d).)
On February 9, 2001, the plaintiff submitted a final site plan application, #2177, to the Commission. (ROR, Item 1.) After a public hearing on March 27, 2001, the Commission unanimously adopted a resolution approving the plaintiff's final site plan application with modifications. (ROR, Item 19.) In a letter of decision dated April 9, 2001, the Commission imposed several modifications on the final site CT Page 15597 plan, including the requirement that the fifty foot front yard setback could not be used for commercial activity pursuant to its policy. (ROR, Items 19; 4(d).) The plaintiff took this appeal from the Commission's decision.
III. JURISDICTION
General Statutes § 8-8 governs an appeal from the decision of a planning and zoning commission to the superior court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Bridgeport Bowl-O-Rama v. Zoning Board of Appeals, 195 Conn. 276,283, 487 A.2d 559 (1985).
A. Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). Aggrievement is a factual issue, "and credibility is for the trier of the facts. . . ." (Internal quotation marks omitted.) QuarryKnoll II Corporation v. Planning and Zoning Commission, 256 Conn. 674,703, 780 A.2d 1 (2001). An owner of property that is the subject of an application is aggrieved for the purpose of bringing an appeal, and a plaintiff may prove aggrievement by testimony at the time of trial.Winchester Woods Associates v. Planning Zoning Commission,219 Conn. 303, 308, 592 A.2d 953 (1991). A plaintiff may also prove aggrievement "by the production of the original documents or certified copies from the record." (Internal quotation marks omitted.) Quarry KnollII Corporation v. Planning Zoning Commission, supra, 703.
In the present appeal, the plaintiff alleges that he is statutorily aggrieved because he owns the property at 364 West Putnam Avenue in Greenwich, and the Commission's decision regarding the final site plan application, (ROR, Item 1.) would negatively impact his ability to use the property for commercial purposes. (4/16/01 Appeal, ¶ 11.) In addition, at trial, the plaintiff submitted the deed to this property to the court. The court finds the plaintiff to be aggrieved.
B. Timeliness and Service of Process
General Statutes § 8-8 (b) provides, in part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (t) and (g)] of this section within fifteen days from the date that notice of the decision was published as required by CT Page 15598 the general statutes." Subsection (e) [now subsection f] further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
The record contains an affidavit of publication attesting that notice of the Commission's decision was published on April 3, 2001, in the Greenwich Time newspaper. (ROR, Item 18.) On April 17, 2001, this appeal was commenced by service of process on the Greenwich town clerk and at the usual place of abode of the chairperson of the Commission. Accordingly, the court finds that this appeal was commenced in a timely manner by service of process upon the proper parties.
C. Citation
"[A] proper citation is essential to the validity of the appeal and the jurisdiction of the court." (Internal quotation marks omitted.) Gadboisv. Planning Commission, 257 Conn. 604, 607, 778 A.2d 896 (2001). On April 16, 2001, a commissioner of the Superior Court issued a citation, which was filed with the Superior Court of the judicial district of Stamford-Norwalk at Stamford on April 23, 2001.
IV. SCOPE OF REVIEW
"In reviewing and approving site plans the commission acts in an administrative capacity. . . . Furthermore, in reviewing site plans the commission has no independent discretion beyond determining whether the plan complies with the applicable regulations . . . [and] is under a mandate to apply the requirements of the regulations as written." (Citation omitted; internal quotation marks omitted.) Norwich v. NorwalkWilbert Vault Co., 208 Conn. 1, 12-13, 544 A.2d 152 (1988). "It is the board's responsibility, pursuant to the statutorily required hearing, to find the facts and to apply the pertinent zoning regulations to those facts. . . . The board is vested with liberal discretion in conducting hearings. . . . Its power with respect to site plan applications decisions, however, is constrained by statute. . . . A site plan may be modified or denied only if it fails to comply with the requirements already set forth in the zoning or inland wetlands regulations. . . . If the application conforms to the zoning regulations, the board cannot deny the application for subjective reasons that bear no relationship to zoning regulations. . . . If the site plan is either denied or modified, the board is required under § 8-3 (g) to set forth the reasons for its decision." (Citations omitted; internal quotation marks omitted.) R RPool Patio v. Zoning Board of Appeals, 257 Conn. 456, 468-69, CT Page 15599778 A.2d 62 (2001).
"An adverse decision by the board may be appealed to the Superior Court under General Statutes § 8-8 (b). The Superior Court's scope of review is limited to determining only whether the board's actions were unreasonable, arbitrary or illegal. . . . It is well settled that a court, in reviewing the actions of an administrative agency, is not permitted to substitute its judgment for that of the agency or to make factual determinations on its own." (Citations omitted; internal quotation marks omitted.) R R Pool Patio v. Zoning Board ofAppeals, supra, 257 Conn. 469-70. "[T]he appealing aggrieved party [must] marshal the evidence in the record, and . . . establish that the decision was not reasonably supported by the record." (Emphasis in original; internal quotation marks omitted.) Quarry Knoll II Corp. v. Planning Zoning Commission, supra, 256 Conn. 716. "The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." Irwin v. Planning ZoningCommission, 244 Conn. 619, 629, 711 A.2d 675 (1998).
V. DISCUSSION
The Commission approved the plaintiff's final site plan application subject to eight modifications. (ROR, Item 19.) The modification at issue in this appeal is the Commission's prohibition of the sale or display of retail inventory in the front yard setback. (ROR, Item 19.) The Commission stated in its decision that the commercial use for the front yard setback area proposed by the plaintiff violated § 6-205 of the zoning regulations and the Commission's policy which requires that front yard setbacks be free of commercial activity and inventory. (ROR, Item 19.) The Plaintiff appeals from this modification on the ground that the decision was illegal, arbitrary, an abuse of discretion and is based upon a nonexistent policy. (Appeal, ¶ 12.)
The plaintiff contends that the Commission is imposing a restriction on the use of the front yard setback which is not contained in its regulations. (Plaintiff's Brief, p. 6.) He further argues that the Commission is attempting to impose a restriction which has never been imposed before. He emphasizes that a number of retail establishments within the immediate vicinity of his property are using their front yards for retail displays. (Plaitiff's Brief, p. 7.) Therefore, the plaintiff concludes that the Commission is acting illegally and ignoring its own regulations because it is attempting to impose a greater burden on his property than on the property of his neighbors in the same zone. (Plaintiff's Brief, p. 7.) CT Page 15600
The Commission counters that pursuant to § 6-205 of the zoning regulations, the setback area between the building and the front line of a lot must be open space which can be utilized as a front yard. (Commission's Brief, pp. 6-7.) Furthermore, in accordance with § 6-15 (a), the Commission argues that it can regulate the use of the front yard setback area not only to preserve open space but also to protect the public health and safety. (Commission's Brief, pp. 6-7, 9.) In addition, the Commission argues that it correctly interpreted the zoning regulations to prohibit the use of the front setback area for retail use because the Commission's authority includes interpretation and application of zoning regulations. (Commission's Brief, pp. 11-12.)
General Statutes § 8-3 (g)[1] governs the Commission's review of a site plan application. "[The commission's] power with respect to site plan applications decisions . . . is constrained by statute. A site plan may be modified or denied only if it fails to comply with the requirements already set forth in the zoning . . . regulations." R R Pool Patio v. Zoning Board of Appeals, supra, 257 Conn. 468. The Commission evaluates site plan applications in the context of the standards articulated in § 6-15 of the Greenwich zoning regulations.[2] Zoning Regulations § 6-15 (a). (ROR, Item 24.) Pursuant to § 6-15 (a), the Commission considers "the public health, safety and general welfare . . . "in addition to other articulated objectives. Zoning Regulations § 6-15 (a). (ROR, Item 24.) See also, Smith-Groh v. Greenwich Planning, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV 000177355 (December 12, 2001, Mintz, J.); Wood v. Planning Zoning Commission, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV 95 146631 (January 10, 1996, Karazin, J.). The Commission has great discretionary power pursuant to § 6-6 of the zoning regulations to interpret and apply the regulations to promote "the public health, safety and general welfare. . . ." This is because § 6-6 of the zoning regulations provides: "In interpretation and application [the land use regulations] shall be held to be the minimum requirement[s] for the promotion of the public health, safety, convenience and general welfare." (Emphasis added.) Zoning Regulations § 6-6. (ROR, Item 24.)
The zoning regulations require that the front yard setback be at least fifty feet. Zoning Regulations § 6-205. (ROR, Item 24.) The Commission maintains that its policy against commercial activity in the front yard setback area derives from its objective of preserving the intended purpose of the "front yard" as defined by the zoning regulations. Pursuant to the zoning regulations, a "front yard" "shall mean an open space across the full width of the lot between the front wall of the principal building and the front lot line." Zoning CT Page 15601 Regulations § 6-5 (54), (ROR, Item 24.) In addition, the regulations state that one of the objectives for the Commission in reviewing site plans is to ensure the "[a]dequacy of open spaces. . . ." Zoning Regulations § 6-15 (a) (3) (a). (ROR, Item 24.) The Commission's policy against commercial activity within the front yard setback derives from the definition of "front yard" as articulated in the zoning regulations and is in furtherance of "the public health, safety and general welfare. . . ." Zoning Regulations § 6-15 (a), (b), (ROR, Item 24.)[3]
Here, the Commission approved the plaintiff's site plan application subject to a prohibition against commercial activity in the front yard setback; (ROR, Item 19.); and the Commission was regulating the potential activity in the front yard setback pursuant to § 6-15 (a) of the zoning regulations and the site plan review process. (ROR, Items 1(i), 19.) According to the zoning regulations, the Commission may "require such modifications of the proposed [site] plans as it deems necessary to comply with the spirit as well as the letter of these Regulations." Zoning Regulations § 6-15 (a). Further, the Commission has the discretionary authority in the site plan application review process to require applicants, such as the plaintiff, to modify their applications to comply with the Commission's policies and interpretation of the regulations. Zoning Regulations §§ 6-6, 6-15 (a). The Commission considered "the public health, safety and general welfare . . ." in addition to other factors when it reviewed the plaintiff's site plan. Zoning Regulations § 6-15 (a), (b), (ROR, Item 24.); (ROR, Items 1(i), 19.)
As part of its review, the Commission examined the site plan application and other documents submitted by the plaintiff, in addition to reports and recommendations from Greenwich planning and zoning, traffic, and public works agencies; (ROR, Items 1-5.); and these record items provide support for the Commission's concern about the impact of the plaintiff's site plan application on "the public health, safety and general welfare." For example, in its report to the Commission regarding unresolved issues with the plaintiff's final proposed site plan, the Commission staff observed: "The area within the required front yard [setback] is still shown as plant display area on the lawn surface, which the commission found to be non-compliant. Applicant has not addressed this issue." (ROR, Item 4, p. 3.) As the Commission staff noted in its report on the plaintiff's final site plan application, the illustrated commercial use of the front yard setback in the final proposed site plan remained unchanged from the diagram in the plaintiff's earlier site plan proposal. (ROR, Items 4, 4(g).) In addition, the diagram of the plaintiff's final proposed site plan supports the Commission's position CT Page 15602 regarding the site plan application because the diagram clearly illustrates the use of almost the entire front yard setback area as a "plant display area (Lawn Surface)" for commercial inventory. (ROR, Items 4(e), 20.)
The Commission also held a public hearing on March 27, 2001, and considered testimony and proffered exhibits both in support of, and against, approval of the site plan application. (ROR, Items 8-17.) During the public hearing on March 27, 2001, the Commission and members of the public discussed their concerns regarding the commercial activities proposed by the plaintiff for the front yard setback. (Supplemental ROR, Item 28.) Counsel for Gioacchino Pirri, the plaintiff's immediate neighbor, expressed his client's concerns about the proposed commercial activities for the front yard setback: "[I]t is an active area, it is not display. There are going to be people walking around picking out their plants. It is a retail area." (Supplemental ROR, Item 28, p. 45.) In addition, he argued that there would likely be equipment involved with maintaining any inventory placed in the front yard of the property: "[W]e're going to have pallets, we're going to have backhoes and fork lifts. . . . There's a lot of activity taking place." (Supplemental ROR, Item 28, p. 46.)
In addition to the concerns expressed by members of the public at the March 27, 2001 hearing, the Commission articulated the purpose of a setback as a way to "maintain open space, among other things. The absence of a precise statement that within the setback area you may not put activities, commercial activities, whatever, is unnecessary. It speaks for itself." (Supplemental ROR, Item 28, p. 27, remarks by Commissioner Lebien.). In response, plaintiff's counsel argued that there was no policy that required the front yard setback area to be free of commercial activity. (Supplemental ROR, Item 28, pp. 9-11, 27-29.) On April 9, 2001, the Commission issued a letter of decision further explaining its prohibition against commercial activity in the front yard setback. (ROR, Item 19.) In this letter, the Commission stated that the plaintiff's proposal "to create a retail inventory area for plant storage" within the front yard setback was impermissible because plants and inventory would be "available for sale in the required setback area . . . [and] would increase the area of commercial use and require additional parking." (ROR, Item 19, p. 2.)
Further, the Commission's interpretation and application of its own regulations during the site plan review process is entitled to great deference by this court. "Recent decisions of this court . . . have evidenced a trend toward investing zoning commissions with greater discretion in determining whether [a] proposal meets the standards CT Page 15603 contained in the regulations. (Internal quotation marks omitted.)Torrington v. Zoning Commission, 261 Conn. 759, 769-70, ___ A.2d ___ (2002). "Generally, it is the function of a zoning board . . . to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. . . . In applying the law to the facts of a particular case, the board is endowed with . . . liberal discretion, and its action is subject to review . . . only to determine whether it was unreasonable, arbitrary or illegal."[4] Wood v. Zoning Board of Appeals, 258 Conn. 691, 697,784 A.2d 354 (2001). "[A] court that is faced with two equally plausible interpretations of regulatory language properly may give deference to the construction of that language adopted by the agency charged with enforcement of the regulation." Id., 699. "In making such determinations, moreover, a zoning commission may rely heavily upon general considerations such as public health, safety and welfare." (Internal quotation marks omitted.) Torrington v. Zoning Commission, supra, 261 Conn. 770; see also A. Aiudi Sons, LLC v. Planning Zoning Commission, 72 Conn. App. 502, 515, ___ A.2d ___ (2002).
The Commission properly based its decision on the record and reasonably interpreted and applied existing zoning regulations. (ROR, Item 19.); Zoning Regulations § 6-6; A. Aiudi Sons v. Planning Zoning Comm., supra, 72 Conn. App. 515. Its decision was not illegal, arbitrary, nor an abuse of its discretion.
VI. CONCLUSION
For the foregoing reasons, the plaintiff's appeal is dismissed.
So Ordered.
KAVANEWSKY, J.